IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMAS A. GOLUB and DOUGLAS J. MACGINNITIE, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civ. No. 04-1509-SLR ) |
| HILB, ROGAL & HOBBS COMPANY, | ) ) ) |
| Defendant. | ) |

Alan J. Stone, Esquire and Jason A. Cincilla, Esquire of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware.  Counsel for Plaintiffs.  Of Counsel:  James C. Grant, Esquire and Douglas G. Scribner, Esquire of Alston & Bird, L.L.P., Atlanta, Georgia.

Jesse A. Finkelstein, Esquire and Lisa M. Zwally, Esquire of Richards, Layton & Finger, P.A., Wilmington, Delaware.  Counsel for Defendant.  Of Counsel:  Patrick R. Hanes, Esquire and E. Livingston B. Haskell, Esquire of Williams Mullen, Richmond, Virginia.

MEMORANDUM OPINION

Dated: August 3, 2005
Wilmington, Delaware

ROBINSON, Chief Judge

I. INTRODUCTION

On December 10, 2004, plaintiffs Thomas A. Golub and Douglas J. MacGinnitie ("plaintiffs") filed a complaint against defendant Hilb, Rogal & Hobbs Company, alleging common law fraud and breach of contract. (D.I. 1) On January 3, 2005, defendant filed a motion to dismiss plaintiffs' complaint for failure to state a claim. (D.I. 5) The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Presently before the court is defendant's motion to dismiss. For the reasons set forth below, the court grants defendant's motion.

II. BACKGROUND

On May 10, 2002, Hobbs Group, L.L.C. (the "Company"), its members, and Hobbs IRA Corporation's ("HIRAC") shareholders (collectively the "Sellers") entered into an agreement with defendant whereby defendant purchased all of the issued and outstanding membership interest units of the Company and all of the issued and outstanding capital stock of HIRAC for approximately $270,000,000.00 (the "Purchase Agreement"). (D.I. 1 at 3) The purchase price was to be paid through a combination of cash, issuance of defendant's common stock and stock options to the Sellers, and a potential earn-out payment. (Id.) Defendant issued to Sellers $25,843,250.00 in defendant's stock, an additional $25 million in defendant's stock over time and 500,000 non-qualified stock options in defendant. (Id. at 3-4)

Pursuant to Article XIII of the Purchase Agreement, plaintiffs were appointed as representatives of the Sellers with the power "to act in such Sellers' name, place and stead . . . in any dispute, litigation or arbitration involving this [Purchase] Agreement . . . ." (Id. at 1-2)  Plaintiffs filed their complaint in their capacity as representatives for ninety-nine Sellers under the Purchase Agreement. (D.I. 6, Ex. A)[1]

Under the terms of the Purchase Agreement, defendant represented that "[s]ince March 31, 2002 . . . [n]o Material Adverse Effect has occurred with respect to [defendant] and its Subsidiaries."[2]  (D.I. 1 at 4)  In addition, defendant agreed that on and prior to the closing on July 1, 2002, it would "promptly upon becoming aware thereof give Sellers' Representative written notice of any material development affecting the financial condition of [defendant] and any material

---

[1] "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  Plaintiffs' complaint relies on the Purchase Agreement as a basis for its claims.  (D.I. 1) Plaintiffs did not dispute the authenticity of the Exhibit A as a schedule to the Purchase Agreement listing the Sellers.  (D.I. 8) Consequently, the court may consider Exhibit A in ruling on defendant's motion to dismiss.

[2] The Purchase Agreement defines "Material Adverse Effect" as "any adverse change in or effect on the business, condition (financial or otherwise), operations, performance or properties of [defendant] or any of its Subsidiaries . . . that is material to [defendant] and its Subsidiaries . . ., taken as a whole . . . ."  (D.I. 1 at 4)

breach of or inaccuracy in any representation or warranty of [defendant] contained in this [Purchase] Agreement." (Id. at 5) The Purchase Agreement transaction closed on July 1, 2002 (the "Closing Date"). (Id.)

According to plaintiffs' complaint, after closing the Purchase Agreement, defendant made several disclosures to plaintiffs, including: (1) defendant had persuaded Hugh Warns ("Warns"), a securities analyst, to delay the issuance of a market analyst report downgrading the rating of defendant's stock until after the Closing Date (id. at 5-7); (2) defendant was aware prior to the Closing Date that Phoenix Companies, Inc. ("Phoenix"), a major holder of defendant's equity, planned on selling its interest in defendant (id. at 7-9); (3) facts and circumstances that defendant was aware of prior to the Closing Date surrounding the employment status of defendant's Chief Executive Officer ("CEO") (id. at 9). These disclosures form the basis of plaintiffs' complaint.

### III. STANDARD OF REVIEW

In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998). "A complaint should be dismissed only if, after accepting as true all of the

3

facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." Id. Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The moving party has the burden of persuasion. See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).

IV. DISCUSSION

    A.    **Overview of the Securities Litigation Uniform Standards Act ("SLUSA")**

In 1995, Congress enacted the Private Securities Litigation Reform Act ("Reform Act") in response to a perceived harm to markets from frivolous private securities lawsuits. H.R. Conf. Rep. No. 104-369, at 31-32 (1995). The Reform Act sought to deter these "strike suits" by imposing more stringent procedural and substantive requirements for private securities actions in federal courts. See Alessi v. Beracha, 244 F. Supp. 2d 354, 357 (D. Del. 2003); Zoren v. Genesis Energy, L.P., 195 F. Supp. 2d 598, 602 (D. Del. 2002). In response, plaintiffs counsel recognized state laws required no such heightened standards and began filing record numbers of securities actions in state courts. Alessi, 244 F. Supp. 2d at 357; Zoren, 195 F. Supp. 2d at 602. To close this "loophole," Congress enacted SLUSA, which

designates the federal courts as the exclusive venue for nearly all such claims.  See Green v. Ameritrade Inc., 279 F.3d 590, 595 (8th Cir. 2002).  SLUSA preempts certain types of securities class actions:

> (1) Class action limitations[:]  No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging --
>
>> (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
>>
>> (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1).

SLUSA, therefore, mandates removal and then dismissal of any:  (1) covered class action; (2) based on state law; (3) alleging a misrepresentation or omission of a material fact or act of deception; (4) in connection with the purchase or sale of a covered security.  See Prager v. Knight/Trimark Group, Inc., 124 F. Supp. 2d 229, 231-33 (D.N.J. 2000).  In enacting SLUSA, Congress evinced a clear intent toward broad application of the Act.  Alessi, 244 F. Supp. 2d at 357; Zoren, 195 F. Supp. 2d at 603.

SLUSA defines a "covered class action" as any single lawsuit in which:

> (I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact

5

> common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or
>
> (II) one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members[.]

15 U.S.C. § 78bb(f)(5)(B).

Notwithstanding the Act's broad limitation on securities class actions, SLUSA also contains a savings clause, known as the "Delaware carve-out" exception, which preserves certain "covered class actions." Alessi, 244 F. Supp. 2d at 357. A "covered class action" based upon the statutory or common law of the State in which the issuer is incorporated may be maintained if it involves:

> (I) the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer; or
>
> (II) any recommendation, position, or other communication with respect to the sale of any issuer that --
>
>> (aa) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and
>>
>> (bb) concerns decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

15 U.S.C. § 78bb(f)(3)(A)(ii).[3]

### B.  Application of SLUSA to the Complaint

#### 1.  A "covered class action"

Plaintiffs' complaint seeks damages on behalf of ninety-nine Sellers.  (D.I. 1 at 1-2; D.I. 6, Ex. A)  According to the complaint, the alleged misrepresentations and omissions apply to each of the ninety-nine Sellers.  (D.I. 1 at 1-2, 11-13)  Plaintiffs' complaint does not identify, and this court does not perceive, any issues of individualized reliance on an alleged misstatement or omission.  Plaintiffs' complaint also seeks to recover damages on a representative basis on behalf of plaintiffs and other unnamed parties similarly situated.  (Id.)  The court concludes that plaintiffs' complaint satisfied both definitions of "covered class action" in SLUSA.[4]

---

[3]The present matter is not covered by the Delaware carve-out exceptions.  The first Delaware carve-out exception requires the purchase or sale of securities exclusively from or to holders of equity securities of the issuer.  The second Delaware carve-out exception requires communications to holders of equity securities of the issuer.  Plaintiffs' opposition concedes that none of the 99 Sellers held equity securities of defendant.  (D.I. 8 at 7 n.3)  Thus, neither Delaware carve-out exception applies to the present matter.

[4]The legislative history of SLUSA states:

> The class action definition has been changed from the original text of [SLUSA] to ensure that the legislation does not cover instances in which a person or entity is duly authorized by law, other than a provision of state or federal law governing class action procedures, to seek damages on behalf of another person or entity.  Thus, a trustee in bankruptcy, a guardian, a receiver, and other

### 2. State law

Plaintiffs' complaint presents two claims: (1) common law fraud; and (2) breach of contract. (Id. at 11-13) Both of these claims are based on state, rather than federal, law.

### 3. A misrepresentation or omission of a material fact

Plaintiffs' common law fraud claim alleges that defendant made "misrepresentations and omissions with the intent to induce Plaintiffs to close the transactions contemplated by the Purchase Agreement." (Id. at 12) Plaintiffs' breach of contract claim also alleges that defendant breached the Purchase Agreement by failing to disclose: (1) the contemplated stock downgrade by Warns; (2) Phoenix's intent to sell-down its equity position in defendant; and (3) the facts underlying the termination of defendant's CEO. (Id.) Thus, plaintiffs' fraud and breach of

---

> persons or entities duly authorized by law (other than by a provision of state or federal law governing class action procedures) to seek damages on behalf of another person or entity would not be covered by this provision.

S. Rep. No. 105-182, at 8 (1998). Plaintiffs argue that because they are empowered under the Purchase Agreement, and not state or federal law governing class action procedures, plaintiffs are not the type of claimants Congress intended SLUSA to preempt. (D.I. 8 at 10-11) The court declines, however, to find that a representative selected through private contractual negotiations is a representative "duly authorized by law", given the plain language of the statute ultimately passed by Congress, 15 U.S.C. § 78bb(f)(5)(B), and the absence of any caselaw embracing plaintiffs' position. See, e.g., Cape Ann Investors L.L.C. v. Lepone, 296 F. Supp. 2d 4, 9 (D. Mass. 2003) (finding that a bankruptcy trustee's complaint seeking damages on behalf of more than 50 persons constituted a covered class action).

8

contract claims are both based on allegations of misrepresentation or omission of a material fact or act of deception. Where "allegations of a material misrepresentation serve as the factual predicate of a state law claim, the misrepresentation prong is satisfied under SLUSA." Rowinski v. Salomon Smith Barney, Inc., 398 F.3d 294, 300 (3d Cir. 2005) (dismissing a breach of contract claim based on allegations of misrepresentation and omission); see also Behlen v. Merrill Lynch, 311 F.3d 1087, 1093 (11th Cir. 2002) (finding breach of contract claim was preempted when "the crux of the complaint was that the defendants either misrepresented or omitted crucial facts"); Araujo v. John Hancock Life Ins. Co., 206 F. Supp. 2d 377, 384-85 (E.D.N.Y. 2002) (holding that breach of contract claim was preempted where plaintiff generally alleges fraud in connection with the purchase or sale of securities).

      **4.   In connection with the purchase or sale of a covered security**

Under SLUSA the term "covered security" includes, among other things, any security listed on the New York Stock Exchange, the American Stock Exchange, or the Nasdaq National Market, or a security issued by an investment company that is registered, or for which a registration statement has been filed under the Investment Company Act of 1940. 15 U.S.C. § 78bb(f)(5)(E); see also Derdiger v. Tallman, 75 F. Supp. 2d 322, 324 (D. Del. 1999). According to plaintiffs' complaint, defendant's stock is listed

on the New York Stock Exchange. (D.I. 1 at 3-4) Thus, defendant's stock is a covered security.

SLUSA does not define the phrase "in connection with" the purchase or sale of the covered security. In <u>Rowinski v. Salomon Smith Barney, Inc.</u>, the Third Circuit identified four factors to be considered in determining whether a claim of misrepresentation is in connection with the sale of a covered security: (1) whether the covered class action alleges a "fraudulent scheme" that "coincides" with the purchase or sale of securities; (2) whether the complaint alleges a material misrepresentation or omission upon which a reasonable investor would rely; (3) whether the nature of the parties' relationship is such that it necessarily involves the purchase or sale of securities; and (4) whether the prayer for relief "connects" the state law claims to the purchase or sale of securities. 398 F.3d at 302. According to the Court, "[t]he non-inclusive four factors identified here are not requirements, but rather guideposts in a flexible preemption inquiry." <u>Id.</u> at 302 n.7. Courts generally have adhered to a broad interpretation of SLUSA's "in connection" element. <u>Id.</u> at 301.

Plaintiffs' complaint alleges that defendant was aware of: (1) Warns' intent to downgrade his rating of defendant's common stock prior to the Closing Date; (2) Phoenix's plan to reduce its equity holdings in defendant; (3) circumstances surrounding the

termination of defendant's CEO. (D.I. 1 at 5-11) Plaintiffs also allege that defendant persuaded Warns to delay issuing his report downgrading defendant's stock until after the Closing Date. (Id. at 5-7) Finally, plaintiffs allege that prior to the Closing Date defendant informed plaintiffs that Phoenix had no plans to sell down its position. (Id. at 9) Plaintiffs' complaint alleges a fraudulent scheme coinciding with the purchase or sale of covered securities. Plaintiffs also contend that they relied upon defendant's alleged misrepresentations and omissions and that, if they had known the material facts prior to the closing, "they would not have proceeded with the closing on the economic terms and conditions set forth in the Purchase Agreement." (D.I. 1 at 6-7, 8-9, 10-11) Finally, plaintiffs seek recovery of damages the Sellers suffered as a result of defendant's alleged misrepresentations. (D.I. 1 at 12) Thus, plaintiffs' prayer for relief connects the state law claims to the purchase or sale of securities.

## V. CONCLUSION

For the reasons set forth above, the court grants defendant's motion to dismiss plaintiffs' complaint. (D.I. 5) An appropriate order shall issue.